## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| KATHLEEN DELANEY<br>412 Jack Martin Boulevard<br>Brick, NJ 08724, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No.: |
| v. | : | |
| | : | |
| LIFE INSURANCE COMPANY OF<br>NORTH AMERICA<br>1601 Chestnut Street<br>Philadelphia, PA 19192, | : | |
| | : | |
| | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff, Kathleen Delaney, hereby brings this civil action against Defendant Life Insurance Company of North America (hereinafter "Defendant LINA") and states as follows in support thereof:

### NATURE OF ACTION

1.    This case involves a claim for long term disability benefits under the employee welfare benefit plan ("the Plan") of Meridian Health, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Plaintiff seeks recovery of benefits under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B). The Plan is insured and administered by Defendant LINA.

### JURISDICTION AND VENUE

2.    This court has jurisdiction over the issues raised herein pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

1

3.    Venue is proper in the Eastern District of Pennsylvania. *See* 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b).

4.    ERISA provides a mechanism for administrative or internal appeal of benefits denials. *See* 29 U.S.C. §1133.  Those mandatory avenues of appeal have been exhausted in this case; therefore, this civil action has been properly filed in federal court.

## PARTIES

5.    Plaintiff, Kathleen Delaney, is an adult individual currently residing in Ocean County, New Jersey.

6.    Defendant LINA is a business entity with its principal place of business in Philadelphia, Pennsylvania, located in the Eastern District of Pennsylvania.

7.    At all times relevant, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1).

8.    At all times relevant, Defendant LINA insured the Plan and was responsible for making claim determinations.

9.    As an employee of Meridian Health, Plaintiff received coverage under the Plan as a "participant" as defined by 29 U.S.C. § 1002(7).

## CLAIM FOR BENEFITS

10.    Plaintiff, Kathleen Delaney, is presently 61 years old.

11.    Ms. Delaney was an active, full-time employee of Meridian Health from her date of hire, August 23, 1997, through her last date worked, February 17, 2007.

12.    Ms. Delaney's prior occupation was that of a Hospital Admitting Clerk, a sedentary occupation per the Dictionary of Occupational Titles.

13. Ms. Delaney has remained unable to work since her date of disability, February 18, 2007, due to the severity of her health impairments, including but not limited to: multiple autoimmune disorders, namely systemic lupus erythematosus, Sjogren's syndrome, rheumatoid arthritis, Raynaud's syndrome, and scleroderma; chronic osteomyelitis of the right foot; hypothyroidism; anemia; and depression.

14. In June of 2007, Ms. Delaney claimed long term disability (hereinafter "LTD") benefits under the Plan.

15. Defendant LINA approved her claim starting August 17, 2007 and paid the following 24 months of long term disability benefits in recognition of Ms. Delaney's inability to perform the material and substantial duties of her sedentary "Regular Occupation," i.e. a Hospital Admitting Clerk.

16. In April of 2009, upon review of Ms. Delaney's claim, Defendant LINA's medical review concluded she was unable to perform the material and substantial duties of "any occupation," including any form of sedentary work.

17. In a March 21, 2011 letter, Defendant LINA notified Ms. Delaney that the Social Security disability dependent benefit offset reducing her monthly LTD benefit was no longer applicable; thus, increasing her monthly LTD benefit from $329.00 monthly to $746.00 monthly.

18. In a November 8, 2011 letter, Defendant LINA offered Ms. Delaney a lump sum settlement offer of $34,000.00 in lieu of continued monthly benefits based on the company's present day value calculation totaling $51,492.43, using a 4.75% interest rate.

19. Defendant LINA's lump sum settlement offer constituted approximately 65% of the claim's estimated total future value as of November 2011, or roughly 45

3

months of continued monthly benefits payable in a one-time lump sum if considering the monthly benefit rate of $746.00.

20.     Ms. Delaney did not accept Defendant LINA's lump sum settlement offer.

21.     In October of 2013, Ms. Delaney requested a benefit verification letter from Defendant LINA explaining that she needed to provide this financial information "to a charity that helps pay for her medical expenses."

22.     Defendant LINA provided income verification letters dated October 1, 2013 and October 11, 2013 explaining,

> *Life Insurance Company of North America is currently paying $746.00 per month in insurance benefits under the above-referenced policy to KATHLEEN DELANEY. We have paid benefits on a continuous basis since August 17, 2007. Benefits will continue as long as KATHLEEN DELANEY continues to meet all the provisions of the policy under which benefits are payable.*

23.     On October 17, 2013, six days later, Defendant LINA mailed a letter to Ms. Delaney explaining that the company was "conducting a recertification" of her LTD claim.

24.     Defendant LINA ordered Ms. Delaney to attend a functional capacity evaluation in April of 2014 which concluded she has a maximum work capacity for 5 to 6 hours of work per day, which is part-time work.

25.     Defendant LINA's Transferable Skills Analysis dated May 16, 2014 conducted by an internal vocational consultant noted the functional capacity evaluator's finding that Ms. Delaney had a maximum work capacity of 5 to 6 hours daily, and noted the Plan's any occupation wage requirement to be $28,980.36 annually.

4

26.     The Transferable Skills Analysis identified two sedentary jobs, one of which was Ms. Delaney's Regular Occupation as a Hospital Admitting Clerk, with annual wage rates totaling $39,210.00 and $39,020.00.

27.     The Transferable Skills Analysis does not, in any way, explain if the annual wages for the occupations identified compensate for, or are adjusted for, Ms. Delaney's restriction to part-time work, not full-time work, per the findings of Defendant LINA's functional capacity evaluation.

28.     The Transferable Skills Analysis is vague, deficient, and unreliable with respect to its evaluation of full-time versus part-time wage rates for the occupations identified.

29.     If interpreted fully and fairly, the April 2014 functional capacity evaluation and May 2014 Transferable Skills Analysis are supportive of disability per the Plan.

30.     If Ms. Delaney were limited to a 5 hour work day as supported by Defendant LINA's functional capacity evaluation, which is 62.5% of an 8 hour work day, and the full-time annual wage rate of a Hospital Admitting Clerk, $39,210.00, was reduced by the same percentage to account for the reduction in hours worked, a part-time annual wage rate at 5 hours daily for a Hospital Admitting Clerk totals $24,506.25, which does not meet the $28,980.36 annual wage requirement per the Plan.

31.     On May 30, 2014, Defendant LINA terminated Ms. Delaney's benefits effective that same day, and paid one additional month of benefits through June 30, 2014.

32.     Defendant LINA did not advise Ms. Delaney of her right to legal representation in its May 2014 termination letter, or in any phone calls to her through that date.

33.     Ms. Delaney filed an appeal without the benefit of legal counsel.

34.   In a June 30, 2014 letter, treating rheumatologist Dr. Carrie Edelman, M.D. opined,

> *Kathleen Delaney has been a patient of mine since 2003. She suffers from SLE, Sjogrens, Scieroderma, and severe Raynauds Phenomenon. Unfortunately she has aggressive disease with skin involvement, active digital ulcers, lung involvement, and other internal organ involvement. She has very limited ability of using her hands with skin changes. She gets shortness of breath and fatigue with any prolonged activity. She cannot currently work secondary to her disease activity and would not be a competent employee. Please take this into consideration when assessing her disability. She is truly disabled from her multiple autoimmune processes.*

35.   On review of Ms. Delaney's appeal, Defendant LINA ordered a medical review which was conducted by a paid medical consultant, rheumatologist N. Nichole Barry, M.D.

36.   Dr. Barry's August 2014 report is on letterhead reading, "MES Solutions."

37.   Dr. Barry's August 2014 report is inherently contradictory in its discussion of the April 2014 functional capacity evaluation where the doctor reasons,

> *The functional assessment is quite detailed and supports the limitations from the physical therapist. Therefore, the limitations noted on the 4-24-2014 by the physical therapist in the functional assessment are supported, and would more appropriately reflect*

6

> *the claimant's ability to perform job duties. She would be able to*
>
> *work full time.*

38.    Dr. Barry also wrote in her August 2014 report that Ms. Delaney's limitations are

       based on her rheumatological disease.

39.    Defendant LINA did not rectify the contradiction of the functional capacity

       evaluation findings for, at best, 5 to 6 hour work days with Dr. Barry's opinion,

       which allegedly agrees with the functional capacity findings, yet concludes Ms.

       Delaney is capable of full-time work.

40.    In an October 10, 2014 denial letter, Defendant LINA upheld its prior termination

       of benefits effective May 30, 2014.

41.    Defendant LINA did not advise Ms. Delaney of her right to legal representation in

       its October 2014 denial letter, or in any phone calls to her through that date.

42.    Ms. Delaney filed a voluntary appeal without the benefit of legal counsel.

43.    On review of Ms. Delaney's voluntary appeal, Defendant LINA ordered another

       medical review which was conducted by the same paid medical consultant, Dr.

       Barry.

44.    Dr. Barry's February 2015 report is on different letterhead reading, "Genex:

       Solving the Cost/Care Equation."

45.    Dr. Barry's February 2015 list titled "Documents Submitted for Review," does

       not identify that Dr. Barry was provided with a copy of her August 2014 report,

       nor does the "Summary" discuss that review.

46.    In Dr. Barry's February 2015 report, the "Conflict of Interest Attestation" under

       which Dr. Barry's signature appears, reads in pertinent part that, "I verify that I

have no prior involvement with this case prior to its referral to independent peer review."

47.    Dr. Barry was conflicted where she both had a financial interest conducting the medical review, and where she misrepresented her prior involvement as to the August 2014 review of Ms. Delaney's file.

48.    Defendant LINA violated its own internal appeals review procedures by sending the same file to the same medical consultant at two different levels of appeal relevant to the same period of disability.

49.    Defendant LINA failed to identify or resolve Dr. Barry's conflict.

50.    In Dr. Barry's February 9, 2015 report, she does take note that the April 2014 functional capacity evaluation limited Ms. Delaney to a 5 to 6 hour workday.

51.    Dr. Barry does not rely on or comment on the reliability of the functional capacity evaluation in her February 2015 report, contrary to the findings of her August 2014 report.

52.    Dr. Barry's February 2015 report found no support for limitations based on Ms. Delaney's rheumatological disorders, contrary to Dr. Barry's August 2014 report.

53.    Dr. Barry attempted to contact Ms. Delaney's treating rheumatologist Dr. Edelman by phone without success.

54.    As documented in Defendant LINA's electronic claim notes, Ms. Delaney called Defendant LINA's claims adjuster Young Chang on February 9, 2015 to explain "new developments in her condition" and that she wished to submit additional medical evidence such as an MRI of her right foot and treatment information from an infectious disease doctor.

8

55. Adjuster Young Chang noted his response to Ms. Delaney on February 9, 2015 that, "Advised [her] that we will submit it to be included in the appeal review once it has been [received][sic]." and that "...it will prolong the review process."

56. Defendant LINA did not wait for the additional evidence contrary to its verbal representations to Ms. Delaney.

57. On February 18, 2015, Defendant LINA issued a final denial of Ms. Delaney's LTD claim.

58. A February 27, 2015 phone call documented that Ms. Delaney was unaware that her treating doctor failed to respond to the phone calls of Defendant LINA's paid medical consultant.

59. Ms. Delaney was never notified by phone or in writing that Defendant LINA's paid medical consultant, Dr. Barry, could not contact Dr. Edelman.

60. Per Defendant LINA's electronic claim notes, on April 13, 2015, Ms. Delaney was first advised during a phone conversation of her right to retain legal counsel, after she had no more administrative remedies available to her.

61. Ms. Delaney submitted additional medical evidence to Defendant LINA following its final denial of benefits.

62. In a March 17, 2016 letter, Defendant LINA refused to conduct another review of Ms. Delaney's LTD claim.

63. Defendant LINA ignored and/or minimized the favorable medical evidence, the same evidence it credited for many years.

64. The administrative record is devoid of any significant medical evidence establishing improvement in Ms. Delaney's comorbid medical conditions from August of 2007 through present.

65.   Defendant LINA abused the Plan's grant of discretionary authority, if any.

66.   Defendant LINA failed to follow its own internal claim and appeal review procedures.

67.   Defendant LINA failed to conduct a full and fair review of Ms. Delaney's LTD claim.

68.   Defendant LINA did not order an independent medical examination to be conducted by a rheumatologist, podiatrist, or any other type of licensed physician.

69.   Per the Plan, Defendant LINA had discretion to order an independent medical examination to be conducted by a rheumatologist, podiatrist, or any other licensed physician.

70.   Ms. Delaney exhausted the Plan's mandatory and voluntary administrative remedies; thus, this matter is now ripe for judicial review.

71.   The determination by Defendant LINA that Ms. Delaney is not disabled effective May 30, 2014 per the terms of the Plan is contrary to the medical evidence of record and has no rational support in evidence.

72.   The determination by Defendant LINA that Ms. Delaney is not disabled effective May 30, 2014 is contrary to the definition of disability and the terms of the Plan.

73.   Defendant LINA's determination to terminate Ms. Delaney's long term disability benefits effective May 30, 2104 was arbitrary and capricious.

74.   As a direct and proximate result thereof, based on the evidence submitted to Defendant LINA establishing that Ms. Delaney met the Plan's definition of "Disability" continuously beyond May 30, 2014, Plaintiff is entitled to payment of monthly benefits retroactive from July 1, 2014, the first day benefits were not

paid, through present.  These benefits should be continued as long as Plaintiff remains disabled in accordance with the terms of the Plan.

WHEREFORE, Plaintiff prays for the following relief:

A.   That the Court enter judgment in Plaintiff's favor and against Defendant; and

B.   That the Court order Defendant to pay disability to Plaintiff in an amount equal to the contractual amount of benefits to which Plaintiff is entitled; and

C.   That the Court order Defendant to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment; and

D.   That the Court award Plaintiff attorney's fees pursuant to 29 U.S.C. § 1132(g); and,

E.   That Plaintiff recover any and all other relief to which she may be entitled, including but not limited to remand to Defendant LINA for further administrative proceedings, as well as the costs of suit.

Respectfully Submitted,

By:   _____
Joseph Capitan, Esq. 307043
Martin Law
1818 Market Street, 35th Floor
Philadelphia, PA 19103
p: 215.587.8400
f: 267-765-2031
jcapitan@paworkinjury.com
*Attorney for Plaintiff, Kathleen Delaney*